BC

FILED
10/3/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

QR

AT THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| BFG Corporation d/b/a Byline Financial Group as assignee of Star Capital Group, L.P., **Plaintiff**,<br><br>v.<br><br>Pierce RE Holdings, LLC;<br>Frederick Brewster, an individual;<br>and Jennifer Brewster, an individual,<br>**Defendants**. | **Case Number: 1:25-cv-02142**<br><br>**DEFENDANTS' MOTION TO RECONSIDER AND TO STAY STATUS HEARING** |

Defendants Frederick Brewster and Jennifer Brewster (hereinafter referred to as "**Defendants**"), proceeding *pro se* and d/b/a Pierce RE Holdings, LLC, hereby move this Court to reconsider its Memorandum Opinion and Order dated September 24, 2025 (Doc. 41), which denied Defendants' Motion to Dismiss. In support, Defendants state as follows:

**I. INTRODUCTION**

This Court's order rests on clear errors of law and fact. Among other things, it:

1. Characterized Defendants' statutory arguments as "bizarre" without addressing the controlling text of the statute;
2. Shifted the burden of statutory interpretation from the judiciary to the litigants; and
3. Asserted that Defendants cited "hallucinated" cases, which, respectfully, are real and attached hereto for the Court's convenience.

While Defendants appreciate the Court's candor in confessing its difficulty engaging with statutes that have guided financial administration for over a century, unfamiliarity does not render a law inapplicable.

## II. LEGAL STANDARD

A motion under Rule 59(e) is appropriate to correct a manifest error of law or fact or to prevent manifest injustice. See *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). The Court has both the discretion and the obligation to ensure its rulings rest on accurate law and fact.

## III. ARGUMENT

### A. The Court Misapprehended 50 U.S.C. § 4305(b)(2).

The Order concluded Defendants "*wholly fail to explain*" how § 4305(b)(2) relieves them of their duties under the Agreement, and dismissed the statute as a matter concerning "*presidential power during the time of war*." That characterization omits the actual statutory text, which provides:

> "*Any payment, conveyance, transfer, assignment, or delivery of property or interest therein, made to or for the account of the United States… shall to the extent thereof be a full acquittance and discharge for all purposes of the obligation of the person making the same.*"

Defendants regret that the Court considered this "*bizarre*", but the statute speaks plainly. Here, Congress did not limit its scope to the President; it wrote "*any payment*" and "*the obligation of the person making the same*." It is difficult to imagine broader language being used, or a more obvious intent.[1]

Neither Plaintiff in its briefing nor the Court in its Order engaged with this controlling language. Instead, both reduce the statute to a caricature, as if it applied only to the President's wartime powers, while ignoring the provision that any payment made to the United States discharges the obligation of "the person making the same".

The Order seemingly neglected to address 50 U.S.C. § 4305(b)(3), which provides the meaning of "person" as it is used in § 4305(b)(2):

> "[…] *As used in this subdivision the term "person" means an individual, partnership, association, or corporation.*"

[1] The word "any" is an English word that means without specification, and it has the same meaning within 50 U.S. Code § 4305(b)(2) as it pertains to which payments may rely upon this statute for discharge. An "obligation" is an English word that means duty or commitment that a person is required to fulfill. As used in the statute, it means any claim of indebtedness against a person, where such obligation is denominated or payable in money of the United States.

Once again, the plain language of the statute reveals that *any* person may rely upon § 4305(b)(2) for *any* payment, so long as it is done in good faith. The Court also overlooked § 4305(b)(3), which defines "person" as "an individual, partnership, association, or corporation." This plain language leaves no ambiguity: Defendants, as individuals, are expressly within its scope.

The Court's suggestion that Defendants bore the burden of explaining why the law applies is puzzling. Ordinarily, statutes apply by their own force once enacted, and this Court appears to be claiming ignorance of the law as a basis for improperly denying a Motion to Dismiss where the law has granted immunity to Defendants in any court.

To the extent a party seeks to avoid a statute's effect, it is that party's burden to show why the statute does not apply. Here, Plaintiff made no such showing and this Court has no discretion to brush aside statutes, no matter how peculiar such statutes may be.

Lastly, the Court's apparent unwillingness to look beyond the caption 'Trading with the Enemy Act', as if doing so limits the scope of § 4305 to the President alone, is misplaced. Title 50 of U.S. Code is *not* positive law (see 1 U.S. Code § 204); therefore, its headings are editorial aids only and do not constitute the substance of the law. The Court may only refer to the body text of the operative statute to determine the substance of the law, and consider its applicability.

**B. 50 U.S.C. § 4305(b)(2) and National Emergency Status.**

While 50 U.S.C. § 4305(b)(2) was originally enacted as part of the Trading with the Enemy Act ("**TWEA**"), its provisions, including those governing assignment of property or obligations to the United States, remain in force during a declared national emergency. See, e.g., *Senate Report No. 93-549* (1973) (recognizing the continuation of national emergency powers since 1933); 12 U.S.C. § 95a (continuation of TWEA authorities); see also *Knauff v. Shaughnessy*, 338 U.S. 537 (1950); *Regan v. Wald*, 468 U.S. 222 (1984).

Presidents have annually continued the declared national emergency since 1933, and the statutory authorities, such as the procedures regarding payments under § 4305(b)(2), remain operative under

the National Emergencies Act, Pub. L. 94-412, Executive Orders 6073, 6102, 6260, 9193, and successive continuations.

Thus, the assignment provisions at issue here are neither obsolete nor limited solely to "time of war," but apply during the ongoing national emergency.

**C. The Court Misapplied UCC Tender Principles.**

The Order observed that Plaintiff refused Defendants' Demand Draft and treated that refusal as dispositive. Respectfully, that is the exact situation contemplated by UCC § 3-603(b), which provides that refusal of tender discharges the obligation. By treating refusal as proof that the tender was invalid, the Court effectively nullified the statute, thereby turning a protective rule into a meaningless formality.

**D. The Court Erred in Suggesting Defendants Cited Non-Existent or Irrelevant Authorities.**

The Court wrote that some cases cited could not be found and implied they were "hallucinated". Plaintiff's briefing similarly dismissed Defendants' authorities as "peculiar" or "incoherent nonsense." Mocking or scoffing cannot be substituted for analysis. Each case cited by Defendants is real and stands for the principle cited, even if unpublished or unfamiliar.

To the extent the Court was unable to locate certain citations, Defendants conditionally agree to provide detailed reports of each case upon stipulation of hourly compensation for their time and labor, unless the Court intends to compel involuntary servitude. Absent such a stipulation, and absent any evidence supporting the "hallucination" theory, the presumption must be that Defendants' citations are proper and accurate.

**E. Due Process and Neutrality**

Courts may disagree with parties' arguments; however, due process requires reasoned adjudication on the merits. When a court substitutes ridicule or opinion for analysis, overlooks controlling statutory language, and misstates the record to discredit a litigant, the appearance of impartiality is undermined. This Court's role is to interpret and apply the law as written, not to editorialize the

parties' arguments as "bizarre" or "nonsense", as if doing so removes the obligation of the Court to uphold due process of law at all times. The Court's language also closely mirrors Plaintiff's own rhetoric. Plaintiff dismissed Defendants' statutory arguments as "peculiar," "cryptic," and "incoherent nonsense". The Court, in turn, adopted the same dismissive framing, labeling the arguments "bizarre" without addressing the text of the statute itself. When a court adopts a litigant's ridicule in place of sound statutory analysis, the appearance of neutrality is lost. Due process requires that this Court evaluate the merits of Defendants' arguments independently, rather than merely echoing one party's disparaging characterizations.

## IV. CONCLUSION

Defendants do not expect the Court to agree with every argument advanced. They do expect, however, that arguments grounded in statute and precedent will be addressed on their merits rather than dismissed with ridicule and dubious threats of sanctions. Efficiency does not permit substituting sarcasm for analysis, nor can manifest errors of law and fact be allowed to stand.

## V. RELIEF DEMANDED

For these reasons, Defendants demand that this Court:

a) Reconsider its Memorandum Opinion and Order of September 24, 2025;

b) Dismiss the case with prejudice, as a matter of law;

c) Correct the factual record to acknowledge that the authorities cited by Defendants are real;

d) Stay or continue the October 8, 2025 status hearing pending resolution of this motion;

e) Clarify or amend the Order to remove inaccurate characterizations of Defendants' citations as "hallucinated," as such statements are unsupported by the record and create an appearance of bias; and

f) Grant such other relief as the Court deems just.

Dated: October 3, 2025

Respectfully submitted,

/s/ *Frederick Brewster*
FREDERICK BREWSTER
Frederick Brewster, *pro se*

/s/ *Jennifer Brewster*
JENNIFER BREWSTER
Jennifer Brewster, *pro se*

c/o 1931 Wildwood Place
Mobile, AL 36609

## CERTIFICATE OF SERVICE

I, the undersigned, hereby declare that on the date below, true, correct, and complete copies of the following item(s) were served on the recipients listed as indicated:

- **DEFENDANTS' MOTION TO RECONSIDER AND TO STAY STATUS HEARING**

☐ The above item(s) were placed inside of a postage-paid envelope, properly addressed to each of the recipients below and sent on the date below.

☐ The above item(s) were filed with the Court and electronically delivered to the recipients listed below.

☐ The above item(s) were sent on the date that this document was executed via electronic mail to an email address designated by the recipient for the receipt of service of legal documents and papers on the date below.

☐ The above item(s) were personally served upon the recipients below.

| | |
|---|---|
| Ashen Law Group<br>Brian Gipson, Esq.<br>217 N. Jefferson St, Suite 601<br>Chicago, IL 60661<br><br>Tel: (312) 655-0800<br>Fax: (312) 655-0801<br><br>Email: bgipson@ashenlaw.com<br>ARDC No. 6335936 | Attorney(s) for Plaintiff(s):<br>BFG Corporation d/b/a Byline Financial Group as assignee of Star Capital Group, L.P. |

Executed on the date written below.

*/s/ Frederick Brewster*
Frederick Brewster, *pro se*

October 3, 2025
Date